# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Cheyanne McCune, | : | Case No. 5:07CV2464 |
| | : | |
| Plaintiff | : | Judge Dan A. Polster |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

On November 18, 1985, not quite seven months after the plaintiff's birth, the plaintiff's father applied for an award of supplemental security income on her behalf based upon the fact that she was born with spina bifida. That application was granted in March 1986, November 18, 1985 as the effective onset date.

In 2003, after the plaintiff reached age 18, that award was reexamined under the standards applicable to adults, and on September 23, 2003 a cessation of benefits was issued, with a finding that the plaintiff was no longer disabled as of September 1st. The Disability Determination Rationale for that action reads:

> The mental [sic] evidence shows that the claimant has a history of myelomeningocele which was successfully closed shortly after birth. She used a bilateral AFO until about age 15, but she uses no ambulatory aids currently. There is an RFC for light lifting and carrying. The claimant cannot safely climb ladders or scaffolds. There is also a history of borderline intellectual functioning. There is a mental RFC for a wide range of simple, routine, low-stress work. The claimant has no past work history. However, she can perform

> many types of jobs which require only light lifting and the performance of only simple, routine, low-stress tasks.

Following denial of reconsideration of that determination at the state agency level the plaintiff sought de novo review by an Administrative Law Judge (ALJ).

A hearing pursuant to that request was convened on June 22, 2006, at which the plaintiff and her mother appeared without counsel. The ALJ explained to them in detail the benefit of having representation. He also informed them that at a further proceeding a medical expert and a vocational expert would be testifying. Because it appeared that there was additional medical evidence to be gathered the ALJ reset the hearing for August 10, 2006. As the hearing ended the ALJ had his hearing assistant provide the plaintiff's mother with a document pertaining to obtaining representation, and stated to them:

> I just ask that you consider it. I think it's, I think it's, I advise everybody who appears before me to, to get representation and it's, and it's, you know, lawyers sometimes are able to ensure that, you know, something critical isn't overlooked and that's my concern. So just consider it, but you have every right to proceed without one and whether you have one or not we're going to proceed on August 10th. Okay?

On August 10th the plaintiff and her mother appeared without counsel. When the ALJ inquired of that circumstance the plaintiff's mother stated "I called a few. But every time they call me back, I had to call another number," to which the ALJ responded "Okay. Okay. Well as I told you in June, I wasn't—I'm not prepared to continue this based upon the fact I did advise you of your rights at that time and [plaintiff's mother 'correct'] we're going to proceed today."

The hearing then went forward, with testimony taken from the plaintiff, the plaintiff's mother, a medical expert, Dr. Franklin Plotkin, and a vocational expert, Mr. Ted Macy.

On December 6, 2006 the ALJ entered his decision finding the defendant not disabled. The

headings on his "Findings of Fact and Conclusions of Law" were:

1. Ms. McCune attained age 18 on April 24, 2003 and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. Ms McCune was notified that she was found no longer disabled as of September 1, 2003, based on a redetermination of disability under the rules for adults who file new applications.

2. As of September 1, 2003, Ms. McCune has had the following severe impairments: spina bifida (Exhibits 21, 25, and 21) and borderline intellectual functioning (Exhibits 23 and 38) (20 CFR 416.920(c)).

3. As of September 1, 2003, Ms. McCune has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that, as of September 1, 2003, Ms. McCune has had the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for six hours of an eight-hour workday; and stand or walk for two hours of an eight-hour workday and for no more than 30 minutes at a time. Ms. McCune is limited in the use of her lower extremities and cannot operate foot pedal controls. She cannot perform work requiring frequent stooping or bending or climb ladders, ropes, or scaffolds. She can balance, stoop, kneel, crouch, crawl, and climb on stairs and ramps on an occasional basis. She should avoid unprotected heights, moving machinery, hazards, and driving automotive equipment. She cannot perform complex tasks and is limited to low-stress work with no production quotas. She is limited to minimal interaction with the public and co-workers that is occasional, superficial, and with requiring no confrontation, negotiation, or arbitration.

5. Ms. McCune has no past relevant work (20 CFR 416.965).

6. Ms. McCune is a younger individual (20 CFR 416.963).

7. Ms. McCune has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because Ms. McCune does not have past relevant work (20 CFR 416.968).

  9. As of September 1, 2003, considering Ms. McCune's age, education, work experience, and residual functional capacity, Ms. McCune was able to perform a significant number of jobs in the national economy (20 CFR 416.960(c) and 416.966).

  10. Ms. McCune was no longer disabled as of September 1, 2003, through the date of this decision (20 CFR 416.987(e) and 416.920(g)).

On June 15, 2007 the Appeals Council denied review of the ALJ's decision, thereby constituting it as the defendant's final determination.

On this appeal plaintiff, now represented by counsel, presents the following four issues:

  1. Did the ALJ err by finding an incorrect residual functional capacity?

  2. Did the ALJ err by not having a psychiatrist present to testify with respect to the plaintiff's non-exertional limitations?

  3. Did the ALJ err by adopting the vocational expert's testimony which is not supported by substantial evidence?

  4. Did the ALJ err by finding that the claimant was not fully credible?

Equally important is what is not being contended on the plaintiff's behalf. No claim is made that the plaintiff was prejudiced by the lack of representation at the de novo hearing, nor is there any argument that the absence of counsel resulted in less than a complete record.

Each of the plaintiff's arguments focuses on her mental/emotional state, no contention being made that there is medical evidence of a physical impairment which would be preclusive of her engaging in all work activities.[1]

At the outset, this Court is constrained to observe that, in this Court's opinion, plaintiff's brief contains instances of overreaching and/or grasping at straws, which did little to advance plaintiff's

---

[1] Given her age, under the standards of the Social Security grids the plaintiff would have to be physically unable to perform even sedentary work if she was to be found incapable of working by reason of exertional limitations.

cause.

For example counsel stated that "Support for plaintiff's argument that the ALJ should have called a psychiatrist to testify is contained in Exhibit 22, a consultative examination stating that McCune's 'allegations appear generally credible' (Tr. 126)." The two flaws in this are (1) the referenced exhibit is not a report of a consultative examination, it is, rather, a Residual Functional Capacity Assessment by a state agency medical review physician, and (2) that review pertains exclusively to the plaintiff's physical state and has no bearing upon her mental status.

A second example is counsel's citation to a single item in another evaluation by a state agency review consultant, this one a Mental Residual Functional Capacity Assessment by a psychologist. Therein the consultant checked off a box indicating that the plaintiff is "Markedly limited" in her "ability to carry out very short and simple instructions." It is patent to this court that this must have been an inadvertent error, as the psychologist also checked off boxes indicating that the plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions, to understand and remember detailed instructions, to carry out detailed instructions and to maintain attention and concentration for extended periods. It defies common sense that the plaintiff would not be limited in those areas of functioning and yet be markedly limited in her ability to carry out very short and simple instructions.

To the extent that the issue initially presented as "Did the ALJ err by finding an incorrect residual functional capacity?" and thereafter articulated as "The residual functional capacity adopted by the ALJ is not supported by substantial evidence and is contrary to the opinions in the record to which he gave full weight" rests upon the foregoing single entry this Court finds it to be devoid of merit.

That position also entails the report of a consultive examination conducted by a clinical

psychologist, Dr. Richard C. Halas, in October 2006. Dr. Halas assigned the plaintiff a GAF score of 65, connoting only "mild symptoms," and the narrative portion of his report concluded with:

### DISCUSSION OF THE FOUR WORK RELATED MENTAL ABILITIES

1. The client's mental ability to relate to others, including peers, supervisors, and the general public is assessed as being within normal limits. She does not have specific deficits in this area. She responded appropriately and adequately during this appointment.

2. The client's mental ability to follow through with simple one and two step instructions or directions is assessed as having moderate limitations. The client's intellectual testing is attached to this report and places restrictions in this area.

3. The client's mental ability to maintain attention to do simple repetitive tasks is intact. She was not assessed as having specific deficits in this area and during the mental status testing was able to concentrate and recall seven digits forward.

4. The client's mental ability to withstand the stresses and pressures associated with most day-to-day work settings is assessed as having mild limitations. The client's psychological adjustment may deteriorate if placed in a stressful, fast paced, demanding work setting.

5. At this point in time, should the client's claim be granted or continued, it is felt that the client is able to manage her funds in an appropriate, practical and realistic manner. She does not have a history of substance abuse problems.

This Court sees no inconsistency between Dr. Halas' determinations and the residual functional capacity as found by the ALJ.

As regards the issue of "Did the ALJ err by finding that the claimant was not fully credible?", this Court considers this to be a non-issue. While this Court recognizes that the ALJ's opinion contains the sentence "After considering the evidence of record, I find that, as of September 1, 2003. Ms. McCune's medically determinable impairments could reasonably be expected to produce the

alleged symptoms, but that Ms. McCune's statements concerning the intensity, persistence and limiting effect of those symptoms are not entirely credible," this Court considers that to be a complete non-sequitur. The fact is that in her very limited testimony the plaintiff did not testify to any symptoms beyond "I don't have good balance at all," let alone to intensity, persistence and limiting effect of any symptoms. This Court believes that the sentence in question may well be regarded as nothing more than give away boilerplate language that really had no place in the ALJ's decision.

The plaintiff's challenge to the vocational expert's testimony—"Did the ALJ err by adopting the vocational expert's testimony, which is not supported by substantial evidence?"—is premised upon two propositions, neither of which this Court finds to be of merit.

In examining the vocational expert the ALJ postulated a hypothetical question assuming an individual of the plaintiff's age and education with capabilities/limitations as he ultimately found, and asked if there were jobs that such an individual could perform. Mr. Macy responded that there were a reduced number of jobs as a bench assembler, wire worker and/or final assembler that such an individual could perform.[2]

It is argued that such testimony should not have been relied upon by the ALJ because the Dictionary of Occupational Titles (DOT) reflects that each of those jobs calls for an educational level beyond that completed by the plaintiff. This argument is foreclosed by the ruling in Matelski v. Commissioner of Social Security, 1988 WL 381361 (6th Cir. 1998), in which the court held:

> Matelski also contends that Nancy Borgeson's testimony was inconsistent. After she initially identified the occupations Matelski could perform given her limitations, the ALJ asked her to provide the DOT numbers, or occupational codes, for these jobs. The occupations Nancy Borgeson identified all had DOT reasoning developmental levels of three or four while reasoning level one represents the ability

---

[2] No argument is advanced by plaintiff that those numbers do not satisfy the "significant numbers" requirement of 20 C.F.R. §416.961(c)(2).

7

>to carry out one-to two-step jobs. (Higher levels represent higher levels of reasoning development.) Because Nancy Borgeson "did not offer an explanation for this inconsistency," Matelski argues, her expert testimony was not substantial evidence supporting the ALJ's decision.
>
>This argument, however, is not persuasive. The DOT itself contains a special notice which provides that occupational information contained therein merely reflects jobs as they generally have been found to occur and warns that the descriptions may not coincide in every respect with the content of jobs as performed in particular industries, establishments, or locations. DOT at xiii. Thus, the reasoning development requirements, as well as some other development requirements, are "merely advisory in nature." Warf v. Shalala 844 F.Supp. 285, 289 (W.D.Va. 1994). A vocational expert's testimony may override the job descriptions and requirements contained in the DOT; Matelski therefore cannot use the DOT to rebut or impeach the vocational expert's testimony. See Conn v. Secretary of Health and Human Servs., 51 F.3d 607, 610 (6th Cir. 1995) (ALJ may rely on vocational expert's testimony contrary to the DOT); Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994) (per curiam) ("[W]e cannot say the ALJ clearly erred by accepting what the expert said [in contradiction to the DOT]."); Casey v. Secretary of Health and Human Servs., 987 F.2d 1230, 1235 (noting that an ALJ may rely on vocational expert's response to a hypothetical question based on claimant's residual functional capacity; this response may serve as substantial evidence in support of the ALJ's decision). The ALJ's reliance on the vocational expert's testimony in this case was not in error.

Slip opinion at p. 6. That same rationale would apply to Mr. Macy's testimony.

The plaintiff's alternative argument that the vocational expert's testimony could not have been relied upon by the ALJ because the ALJ's hypothetical ruled out jobs with production quotas and that "common sense dictates that all jobs require some amount of production quota" suffers from two flaws. First, the ALJ's hypothetical did not rule out all production quotas. It ruled out "production rate piece work." Second, Mr. Macy premised his response to the hypothetical as propounded by the ALJ, and his expertise trumps what plaintiff's counsel believes common sense dictates.

Plaintiff's final claim of error is that the ALJ was required to have a psychiatrist appear at the

8

evidentiary hearing. In this Court's opinion there was no need for such an expert witness, considering that not one of the mental health professionals who evaluated the plaintiff assigned her a GAF which indicated that she suffered from a mental/emotional impairment preclusive of her engaging in the simple level work activities found by the ALJ, nor did any of them opine that she suffered from a mental/emotional impairment of disabling severity.

It is, accordingly, recommended that final judgment be entered in defendant's favor.


s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:   June 19, 2008


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).